Robert D. ZINGHER, Plaintiff,

v.

David YACAVONE, Commissioner of Vermont Dept. of Aging & Disabilities; Vermont Division of Vocational Rehabilitation; Richard Riley, Secretary of United States Department of Education; United States Department of Education, Defendants.

No. 2:96–CV–226.

United States District Court,
D. Vermont.

Oct. 6, 1997.

See also: 163 Vt. 566, 664 A.2d 256.

Robert D. Zingher, Burlington, VT, plaintiff pro se.

Joseph Leon Winn, Vermont Attorney General's Office, Waterbury, VT, Dena Monahan, Department of Aging & Disabilities, Waterbury, VT, for Vermont Division of Vocational Rehabilitation, defendant.

Melissa A.D. Ranaldo, AUSA, Office of the United States Attorney, Burlington, VT, for United States of America (Department of Education), defendant.

Joseph Leon Winn, for David Yacovone, Commissioner of Vermont Dept. of Aging and Disabilities, defendant.

Melissa A.D. Ranaldo, AUSA, Office of the United States Attorney, Burlington, VT, for Richard Riley, Secretary of United States Department of Education, defendant.

## ORDER

SESSIONS, District Judge.

The Report and Recommendation of the United States Magistrate Judge was filed September 17, 1997. Plaintiff Robert D. Zingher timely filed his objections to the Report and Recommendation on October 1, 1997.

A district judge must make a *de novo* determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1); *Perez–Rubio v. Wyckoff,* 718 F.Supp. 217, 227 (S.D.N.Y. 1989). The district judge may "accept, reject, or modify, in whole or in part, the magistrate's proposed findings and recommendations." *Id.*

After careful review of the file, the Magistrate Judge's Report and Recommendation and the plaintiff's objections, this Court ADOPTS the Magistrate Judge's recommendation in full for the reasons stated in the Report.

Federal Defendants' motion to dismiss, or in the alternative, motion for summary judgment, is GRANTED (Paper # 28). State

Defendants' motion to dismiss is GRANTED (Paper # 45).

THIS CASE IS CLOSED.

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

NIEDERMEIER, United States Magistrate Judge.

Robert D. Zingher brings this action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 29 U.S.C. § 794a, asserting numerous violations of the Rehabilitation Act, the Americans with Disabilities Act and the Equal Protection Clause of the United States Constitution. Presently before the Court are the state defendant's motion to dismiss (Paper 45), and the federal defendant's motion to dismiss or in the alternative, motion for summary judgment. (Paper 38.)

For the reasons stated below, I recommend that the Court grant both motions to dismiss.

### Procedural Background

Zingher filed a *pro se* complaint on July 9, 1996 naming as defendants the Vermont Division of Vocational Rehabilitation ("DVR"), the United States Department of the Treasury and the United States Department of Education (collectively, "federal defendants"). On August 23, 1996, the DVR moved for a more definite statement of the case. On October 3, 1996, the federal defendants filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). On October 30, 1996, the DVR also filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6). At this time, Zingher requested the appointment of counsel.

On October 30, 1996, I granted the DVR's motion for a more definite statement and denied Zingher's request for appointment of counsel. However, upon further review I appointed counsel for Zingher on November 25, 1996.

On January 31, 1997, Zingher's counsel filed an amended complaint. The amended complaint dropped the U.S. Department of

the Treasury as a defendant and named the current defendants alleging constitutional violations under the Rehabilitation Act, the Americans with Disabilities Act and the Equal Protection Clause.

### Background[1]

Zingher is a disabled individual who has a learning disability, dysthymia, obsessive-compulsive personality disorder, hypertension, obesity and noninsulin-dependant diabetes. He has obtained a master's degree in business administration and is a certified public accountant. While receiving his education, Zingher's disability forced him to drop below the full-time student enrollment status. Paper 29 at 2. His part-time enrollment status prompted his creditors to declare his student loans due and demand repayment. Paper 29 at 2. However, he could not repay his loans because he was unemployed. Paper 29 at 2. Subsequently, Zingher received educational loan deferments based on his unemployed status or enrollment in rehabilitation programs. Paper 29 at 2.

In 1990, Zingher sought the services of the DVR. In October 1990 the DVR determined that Zingher qualified as a disabled person within the meaning of the Rehabilitation Act. The DVR proceeded to construct an Individualized Written Rehabilitation Program for him pursuant to 29 U.S.C. § 22. After one failed attempt at establishing a satisfactory rehabilitation plan, Zingher and the DVR instituted a program, pursuant to the order of the Human Services Board, that provided for psychological counseling, neurolinguistic sessions, interview training, job placement and job follow-up. This program began in July 1992 and lasted through April 1993. During this time, Zingher received ten sessions of neurolinguistic training, ten sessions of psychological counseling, and forty-five hours of counseling on interview techniques and resume writing.

In April 1993, Zingher obtained a job with the Lilydale Bakery as an accountant and financial manager. The DVR appointed an experienced vocational evaluator to deter-

---

1. Most of the facts are taken from *Zingher v. Dept. of Aging and Disabilities* 163 Vt. 566, 664

A.2d 256 (1995).

mine what tools Zingher would need for his work. One of those tools was a computer system capable of financial accounting work. DVR therefore provided a computer expert to determine Zingher's equipment needs for the business site. The computer expert submitted those determinations to the DVR on May 25, 1993 so that DVR could purchase the equipment. Zingher initially objected to the computer equipment report and a new report was issued on June 16, 1993. The DVR then set up a meeting with the owner of the Bakery to clarify that he intended to purchase the computer system compatible with the compensatory equipment that DVR would provide. Zingher objected to this meeting, however, because he did not feel that his boss had any knowledge regarding computers. Zingher's objection coupled to the "employer's uncertain plan to obtain a new computer system and the [DVR's] desire to ascertain the new system prior to purchasing compensatory equipment" delayed the ordering of the computer equipment until after July 8, 1993. *Zingher,* 163 Vt. at 570, 574, 664 A.2d 256.

On July 22, 1993, with the computer equipment expected by the end of the week, Zingher's employer discharged him from his position and canceled the computer order. The employer stated that he dismissed Zingher because Zingher "wanted to conduct financial analyses that required equipment too expensive for the business to purchase and unnecessary for financial success." *Id.* at 570, 664 A.2d 256.

Zingher subsequently filed a grievance with the Vermont Human Services Board alleging that the DVR's failure to provide him with computer equipment violated the terms of his rehabilitation plan and caused him to lose his job. The board dismissed Zingher's claim and he appealed to the Vermont Supreme Court, arguing that "the failure [of DVR] to provide [him with] the computer software and hardware in a timely fashion after he obtained employment violated the [Human Services] board's first order"

to provide him with adequate rehabilitation training. *Id.* at 572, 664 A.2d 256. The Vermont Supreme Court held that the Rehabilitation Act does not require DVR "to maximize [Zingher's] employability without regard to financial consideration [but] that it is appropriate to consider cost in providing services in an efficient manner once the client's goals have been defined." *Id.* (citing *Buchanan v. Ives,* 793 F.Supp. 361, 364 (D.Me. 1991)). The Court further held that "equipment necessary for [a plaintiff] to do the job [once hired] must be provided promptly." *Id.* 163 Vt. at 574, 664 A.2d 256.

Following the Vermont Supreme Court's ruling, Zingher alleges that DVR has not found or assisted him in finding further employment, has not provided services to manage his disability, and has closed his case. Paper 29 at 4–5.

By 1994, Syracuse University and the Norstar Bank, Zingher's loan holders, had declared his student loans in default and transferred them to the United States Department of Education for collection. Paper 29 at 2, Paper 39 at 4–5. Following the declaration of default, the Department of Education would not grant Zingher further deferments on his student loans despite the fact that he was unemployed and had been receiving rehabilitation services. Paper 29 at 2. As a result of Zingher's inability to obtain a loan deferment, he has accrued more than $20,000 in interest, fees, costs and penalties on his student loans. Paper 29 at 3.

Zingher's amended Complaint alleges the DVR has violated the Rehabilitation Act, the Americans with Disabilities Act, and the Equal Protection Clause of the United States Constitution through its dealing with him from the time DVR qualified him as disabled to DVR's alleged termination of their relationship. He requests that the Court:

(1) Order defendants Yacavoni [sic] and DVR to provide funds for the services recommended by Dr. Stone; [2] (2) Order defendants Yacavoni [sic] and DVR to pro-

---

2. Dr. Patricia Stone is a Ph.D. in clinical psychology. She recommended a comprehensive, cohesive and coordinated set of services to address Zingher's learning disabilities and social and emotional difficulties. Paper 29 at 3. Zingh-

er allegedly made several requests for the DVR to implement Dr. Stone's rehabilitation program. Paper 29 at 4. Zingher contends the provisions of Dr. Stone's program were never implemented. Paper 29 at 4.

vide funds for support materials, computer equipment, and a co-writer service as support to obtain employment or self employment; (3) Order defendants Yacavoni [sic] and DVR to determine if employment in accounting is viable and either prepare a I[ndividual] W[ritten] R[ehabilitation] P[lan] for the plaintiff that coincides with the commercial realities of a job in the accounting field or assist plaintiff in setting up his own business; (4) Award the plaintiff compensatory and punitive damages. Paper 29 at 6.

Zingher also brings this action against the United States Department of Education and its Secretary, Richard Riley, alleging that they have violated the Rehabilitation Act, the Americans with Disabilities Act, and the Equal Protection Clause of the United States Constitution "by defaulting and refusing to defer [plaintiff's] student loans and imposing penalties and interest." Paper 29 at 5. Zingher requests this Court to: "(6) Order defendants Riley and DOE to remove the plaintiff's student loans from default status and to grant him deferent of his repayment obligation until he obtains regular and steady employment" and "(7) Remove all penalties and interest from the plaintiff's student loan accounts." *Id.*

Against both defendants, Zingher requests attorney's fees and costs and "such other relief as the court deems necessary." Paper 29 at 6.

### DISCUSSION

#### I. *Standard of Review*

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (footnote omitted). When ruling on a motion to dismiss for failure to state a claim, the court is required to accept as true all well-pled, material facts alleged in the complaint. *See Frasier v. General Electric Co.,* 930 F.2d 1004, 1007 (2d Cir.1991). "[L]egal conclusions, deductions or opinions couched as factual allegations are not given a

presumption of truthfulness." 2A James W. Moore, *Moore's Federal Practice,* § 12.07 (2d ed.1991).

#### A. *State Defendants' Motion to Dismiss* (Paper 45)

■ The DVR argues that *res judicata* bars Zingher from maintaining a cause of action for claims arising out of the facts and circumstances surrounding his earlier litigation in *Zingher v. Dept. of Aging and Disabilities,* 163 Vt. 566, 664 A.2d 256 (1995). The Full Faith and Credit Clause to the United States Constitution requires federal courts to give a prior state court judgment the same preclusive effect that such a judgment would have had in state court. *See* 28 U.S.C. § 1738; *Giakoumelos v. Coughlin,* 88 F.3d 56, 59 (2d Cir.1996). Thus, the Court must determine what preclusive effect a Vermont state court would give Zingher's initial action in the Vermont Supreme Court. *See Burka v. New York City Transit Authority,* 32 F.3d 654 (2d Cir.1994).

■ According to Vermont law, the doctrine of *res judicata,* or claim preclusion, bars the litigation of a claim or defense if former litigation resulted in a final judgment. *Berlin Convalescent Center v. Stoneman,* 159 Vt. 53, 56, 615 A.2d 141 (1992). Specifically, *res judicata* applies when the current litigation: (1) involves the same parties, (2) involves the same subject matter, (3) advances a cause of action which is the same or substantially similar to the previous litigation, and (4) there has been a final adjudication of the action. *See Gardner v. Arenz,* No. 94–384, slip op. at 5 (D.Vt. Jan. 23, 1996) (Magistrate Judge's Report and Recommendation), *adopted in toto,* (Sessions, J.) (Feb. 13, 1996).

■ A cause of action qualifies as a "same" cause of action if the evidence used to support the first cause of action can also support the second. *See Hill v. Grandey,* 132 Vt. 460, 463, 321 A.2d 28 (1974) (citing *Trapeni v. Walker,* 120 Vt. 510, 144 A.2d 831 (1958)). Zingher argues that his current action is not the same or substantially similar to his first suit because his prior action did not involve issues of the deprivation of constitutional or civil rights. Paper 48 at 2. He

maintains that the Vermont Supreme Court gave deference to the Human Services Board's factual findings and legal conclusions and "did not independently evaluate the case for discrimination." Paper 48 at 3. Moreover, in the first cause of action, the Human Services Board and the Vermont Supreme Court did not specifically address the issue of whether the DVR's alleged delays and inconsistencies in dealing with him constituted discrimination. Paper 48 at 3–4. While this is true, such a contention ignores the fact that this case involves the *exact* facts and time frame that encompassed the first lawsuit thus establishing that he could have brought the current constitutional claims in the first action. The issue is not whether the Vermont Supreme Court evaluated the actual issue in question, but rather, whether Zingher had a full and fair opportunity to bring those issues to the Court for its consideration. In that vein, *res judicata* serves to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry*, 449 U.S. 90, 95–96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) (citations omitted). Accordingly, this Court cannot allow Zingher the opportunity to continually address his disputes with the DVR during the time frame addressed by the Vermont Supreme Court as he has already had a full and fair opportunity to raise those claims. Such opportunity applies equally to the Rehabilitation Act claim, the American with Disabilities Act claim and the Equal Protection claim against the state defendants. The claim against the state defendants should be barred.

### B. *Federal Defendants' motion to dismiss*

The federal defendants move to dismiss Zingher's claims under the Rehabilitation Act, the Americans with Disabilities Act, and The Equal Protection Clause of the United States Constitution for failure to state a claim upon which relief may be granted. The Court will address the disposition of defendants' motions with respect to each individual claim.

#### (1) *Americans with Disabilities Act*

 Zingher alleges that the federal defendants violated the ADA by defaulting and refusing to defer his student loans and by applying penalties and interest. Paper 29 at 5. He maintains that his disability and enrollment in a rehabilitation program with the DVR entitled him to loan deferments such that the Department of Education's failure to grant such deferments constitutes discrimination in violation of the ADA. Paper 29 at 5.

The ADA provides that "public entities" may not discriminate against any individual because of his disability or exclude him from participating in any service, program, or activity which the entity provides. 42 U.S.C. § 12132. The ADA specifically defines a "public entity" as:

(A) any State or local government;

(B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and

(C) the National Railroad Passenger Corporation, and commuter authority. 42 U.S.C. § 12131.

The language of the statute does not include federal executive agencies nor their secretaries as "public entities." Cf. *Melton v. Freeland*, No. 1:96CV516, 1997 WL 382054 (M.D.N.C. Feb.6, 1997) (federal courts not subject to ADA requirements because definition of "public entities" is limited to state and local governments and their instrumentalities); *Turgeon v. Brock*, 8 ADD 1240 (D.N.H. Dec.20, 1994) (same). Therefore, the Court should dismiss Zingher's claim under the ADA for failure to state a claim against the federal defendants.

#### 2. *Rehabilitation Act*

Zingher makes two allegations under the Rehabilitation Act. First, he argues that the federal defendants violated § 504 of the Rehabilitation Act by defaulting and refusing to defer his student loans and by applying penalties and interest. Paper 29 at 5. He maintains that his disability and his enrollment in a rehabilitation program qualified him for a loan deferral which the defendants denied. He contends that the defendants' failure to grant him loan deferments constitutes dis-

crimination in violation of the Rehabilitation Act. Paper 29 at 5. Second, Zingher argues that the federal defendants failed to insure that the DVR used federal funds in a non-discriminatory fashion. Paper 41 at 3.

### (a) Loan Deferments

Defendants maintain that Zingher does not allege a redressable injury because he fails to establish that he is an "otherwise qualified" individual for the purposes of obtaining loan deferrals. Paper 39 at 7.

■ Section 504 of the Rehabilitation Act provides in relevant part:

No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination ... under any program or activity conducted by any Executive agency.

29 U.S.C. § 794(a). To establish a violation of section 504, a plaintiff must prove that:

(1) he or she is a "handicapped person" as defined in the Rehabilitation Act; (2) he or she is "otherwise qualified" to participate in the offered activity or to enjoy its benefits; (3) he or she is being excluded from such participation or enjoyment solely by reason of his or her handicap; and (4) the program denying the plaintiff participation receives federal financial assistance.

*Rothschild v. Grottenthaler,* 907 F.2d 286, 289–90 (2d Cir.1990) (citing *Doe v. New York Univ.,* 666 F.2d 761, 774–75 (2d Cir.1981)).

■ A person qualifies as an "otherwise qualified" individual when he can demonstrate that he can meet all the procedural and substantive requirements of a program in spite of his handicap. *See* 34 C.F.R. § 105.3, *Rothschild;* 907 F.2d at 290 (citing *Southeastern Community College v. Davis,* 442 U.S. 397, 406, 99 S.Ct. 2361, 60 L.Ed.2d 980 (1979)). In order to obtain a rehabilitation training program deferment, Zingher needed to provide the Department of Education with a statement from an authorized official of the DVR certifying that he was either receiving, or was scheduled to receive, services under the DVR's program. *See* 34 C.F.R. § 682.210(e)(1).

■ Zingher acknowledges that he did not meet the Department's procedural requirements. Paper 29 at 2–3. He does state that he informed the Department on a number of occasions of his enrollment in the DVR's rehabilitation program but does not assert that an authorized individual within the DVR submitted a statement confirming he was receiving or was scheduled to receive services from the DVR. Rather, Zingher contends that his inability to come to an agreement with the DVR regarding the specifics of his service plan prompted the DVR to refuse to provide him with the proper documentation to receive the deferral. Paper 29 at 2; Paper 41 at 2. He therefore contends that the "Department's use of its regulations to deny [his] deferment, despite obvious knowledge of his status with DVR and his inability to find employment" is discrimination and therefore establishes that he is an "otherwise qualified" individual within the meaning of the Rehabilitation Act. Paper 41 at 2–3.

The Second Circuit clearly defines the scope of an "otherwise qualified" individual within the meaning of the Rehabilitation Act. *See Rothschild,* 907 F.2d at 290. Zingher did not meet the procedural requirements to obtain a deferment of his student loans for his enrollment in DVR's rehabilitation program. He did not obtain documentation from the DVR that he was receiving or would be receiving rehabilitation services pursuant to an Individual Written Rehabilitation Plan. If the DVR placed discriminatory barriers that kept him from receiving the documentation necessary to obtain a deferment, then his grievance is with the DVR not the federal defendants.

Even if Zingher did receive such documentation, however, he could not qualify for a deferment because his loans were in default. The Department's loan deferment procedures establish that once an individual's loans are in default, he must rehabilitate them before he may obtain further deferments. *See* 34 C.F.R. § 682.210(a)(8). Rehabilitation requires the debtor to make twelve months of consecutive payments at a "reasonable and affordable amount." *See id.*

Such procedures apply equally to all borrowers and are important to insure that borrowers repay loans granted from government's student loan program. For whatever reason, Zingher never tried to rehabilitate his loans. He therefore was not entitled to a deferment and cannot establish that he was an "otherwise qualified" individual.

### (b) *Use of Federal Funds*

■ Zinger further contends that he can maintain this suit against the federal defendants because they failed to supervise the DVR or otherwise ensure that the DVR used federal funds in a non-discriminatory fashion. Paper 41 at 3. Section 504 of the Rehabilitation Act does not provide a plaintiff with a private right of action against a federal agency simply because that agency supplies federal funds to a state agency against which the plaintiff has a claim. *Marlow v. United States Dept. of Educ.*, 820 F.2d 581, 583 (2d Cir.1987).

Despite this fact Zingher maintains that this action does not derive from the attenuated relationship the Department has with the DVR as its provider of federal funds. Rather, Zingher contends his suit's goal is to force the Department to meet its obligations to investigate his allegations of discrimination within the DVR and "seek compliance with the nondiscrimination provisions of the law." Paper 41 at 3. Section 602 of Title VI, and therefore § 504, contain implementing regulations that provide for terminating the distribution of federal funds to institutions or programs allegedly engaging in discrimination. *See* 42 U.S.C. § 2000d–1, 45 C.F.R. § 84.61. Section 602 also provides that funding beneficiaries may trigger a federal agency investigation into a state agency's alleged discriminatory practices. *See id.* However, nowhere in Zingher's amended Complaint or in his initial recital of the facts does he indicate what action he took to initiate these procedures. Moreover, nowhere in his prayer for relief does he request that this Court order the Department to conduct such an investigation. Therefore, the Court should dismiss Zingher's complaint against the Department and 'its Secretary for failure to state a claim upon which relief may be granted.

### (c) Equal Protection

■ The federal defendants move to dismiss Zingher's claims for failure to state a claim under 42 U.S.C. § 1983. Specifically, they contend that section 1983 does not provide a cause of action for constitutional violations under the color of federal law. Zingher alleges that the defendant's actions have deprived him of "equal protection of the laws of the United States." Paper 29 at 6. To that end, "[e]qual protection analysis in the Fifth Amendment area is the same as that under the Fourteenth Amendment." *Buckley v. Valeo*, 424 U.S. 1, 93, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976).

The Equal Protection Clause of the United States Constitution "requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2nd Cir.1996) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)). In order to survive a motion to dismiss, however, a civil rights complaint must make specific factual allegations indicating a deprivation of rights. *See Fonte v. Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir.1988). Zingher maintains that the Department has placed his loans in default and has failed to grant him a deferral despite his lack of employment and enrollment in a rehabilitation program. Paper 29 at 2. However, he admits that he has not complied with the necessary steps to obtain loan deferrals. Zingher fails to support his allegation of discrimination with any facts that could connect the defendants to any deprivation of his rights. *See id.* at 2–3. Although he asserts discrimination on the part of the defendants, such conclusory allegations do not meet the pleading standard for a claim of constitutional depravation of rights under the equal protection clause. *See Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2d Cir.1987) (holding conclusory statements are insufficient to state a claim under 42 U.S.C. § 1983). Zingher also alleges that the Department's deferment and default policies, as they relate to him, lack a

rational basis. Paper 29 at 6. Such pleadings are insufficient to establish a *prima facie* equal protection violation. The Court should therefore grant defendant's motion for dismissal of plaintiff's equal protection cause of action based on failure to state a claim.

## CONCLUSION

For the reasons stated above, I recommend that defendants' motions to dismiss be GRANTED.